648 A.2d 315

COMMONWEALTH of Pennsylvania, Appellee,

v.

Louis THOMPSON, Appellant.

Supreme Court of Pennsylvania.

Argued April 6, 1994.

Decided Oct. 6, 1994.

300

David Rudenstein, Philadelphia, for L. Thompson.

Catherine Marshall, Norman Gross, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Atty. Gen.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Thompson was tried before a jury in the Court of Common Pleas of Philadelphia—Criminal Division, and was convicted of murder of the first degree, robbery, criminal conspiracy, and possession of an instrument of crime. The convictions arose from Thompson's shooting of Bill Moye outside a crack house in Philadelphia because Moye owed him money. At the penalty phase of the trial, the jury unanimously determined that the Commonwealth established aggravating circumstance (d)(6) (a killing committed while in the perpetration of a felony),[1] and some of the jurors found that Thompson established mitigating circumstance (e)(8) (mitigating evidence concerning defendant's character, record, and the circumstances of the crime).[2] They unanimously found that the aggravating circumstance outweighed the mitigating circumstance and sentenced the defendant to death.

Trial counsel filed post-trial motions and then was permitted to withdraw. Present counsel was appointed and filed additional post-verdict motions, including claims that trial counsel was ineffective. Trial counsel testified at an evidentiary hearing, explaining the reasons for his conduct, and the court denied post-verdict motions. The court also formally imposed the sentence of death for the murder conviction and imposed concurrent sentences for the other convictions.

1. 42 Pa.C.S. § 9711(d)(6).
2. 42 Pa.C.S. § 9711(e)(8).

Thompson appealed to this court as of right pursuant to 42 Pa.C.S.A. § 722(4) (automatic review of death sentences).

■ Pursuant to *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982) and pursuant to Thompson's claim that the evidence is insufficient to support a conviction, we are required to review the sufficiency of the evidence. Testimony established that shortly before the murder, Thompson, carrying a revolver, entered the house at 3849 North Broad Street along with his co-conspirator, and asked whether the victim was present. Persons who were in the house told him that the victim was not present, but Thompson, still holding the revolver, searched the house anyway. Thompson and his co-conspirator then left the house, and shortly after they left, Thompson was heard arguing loudly with the victim and demanding the payment of money. In response to the victim's plea for more time, Thompson stated: "I gave you time." The victim said, "No, man. No. Don't do it. Don't do it." Then a shot was heard, following which a group of people who had been in the crack house came out of the house and saw Thompson, still holding the revolver, and his co-conspirator standing next to the prone body of the victim. The victim was not yet dead, and Thompson was still arguing with him about payment of the debt.

As witnesses attempted to dissuade Thompson from further violence, Thompson replied that the victim owed him "fucking money." The co-conspirator then ripped the pockets from the victim's pants, kicked him in the head, and the two assailants left in Thompson's car. One of the witnesses, Ms. Mouzon, testified that her boyfriend, Hank, was cradling the victim's head, and said that "he" did not have to shoot the victim; that "he" was going to get his money. Another witness, Roberson, identified the shooter as Thompson. A third witness, deceased at the time of trial, stated at the preliminary hearing that the victim, as he lay dying, identified Thompson as the person who shot him. Thompson admitted to police that he was at the crime scene and that he got into an argument and scuffle with the victim because of a debt.

■ Thompson acknowledges that the Commonwealth is entitled to all reasonable inferences as the verdict winner, *Commonwealth v. McCullum,* 529 Pa. 117, 123, 602 A.2d 313 (1992), but argues that the trial court's statement of the evidence amounts to distortion. The lower court stated:

> Defendant fired a bullet into the victim's chest which passed through the lung, heart, inferior vena cava, the diaphragm and liver. The jury appropriately concluded that the defendant used a deadly weapon on a vital part of the body with the intent to kill.

Thompson's claim is that intent to kill cannot be inferred from Thompson's act because it is "unreasonable to believe that defendant Thompson knew that he was firing through the inferior vena cava of the victim." Instead, Thompson asserts that the evidence supports only a third degree murder conviction.

■ Thompson acknowledges that an intent to kill *may* be inferred from the use of a deadly weapon against the vital part of the victim's body, but argues that since the inference is permissive only, it should not have been drawn. Having conceded this much, Thompson's claim must fail because if the jury may conclude that the inference of intent may be drawn, and it in fact drew that inference, it did no more than it was permitted to do.

Thompson also argues that the evidence is insufficient to establish guilt of robbery because he did not take anything personally from the victim and because he had begun to walk away from the victim when his co-actor began to rip the pockets out of the victim's pants.

■ A person is guilty of robbery if he causes or threatens to cause serious bodily injury during an attempt to commit a theft. 18 Pa.C.S. § 3701(a)(1), (2).[3] The robbery is com-

---

3. 18 Pa.C.S. § 3701 provides, in pertinent part:

(a) Offense defined.
(1) A person is guilty of robbery if, in the course of committing a theft, he:
(i) inflicts serious bodily injury upon another; ...

plete upon commission or threat of violence, and does not depend upon the occurrence of a completed theft. The robbery was complete when Thompson shot the victim in the course of attempting to take money from him, regardless of subsequent conduct of the co-actor and regardless of whether any property was actually taken. The evidence is that Thompson searched for the victim in order to collect money, found the victim, demanded his money, and then shot the victim in an attempt rob the him as a means of collecting the alleged debt.

Additionally, Thompson is guilty of robbery because he acted in conspiracy with his co-actor to use violence to collect the alleged debt. The two criminals stalked the victim together, confronted him together, and attacked him together and separately. Thompson is responsible for the acts of the co-conspirator in furtherance of the conspiracy, *Commonwealth v. Jackson*, 506 Pa. 469, 474–75, 485 A.2d 1102 (1984), and it is plain that the co-conspirator was continuing to carry out the plan to collect the alleged debt by force when he ripped the pockets from the victim's pants. In either event, there is sufficient evidence to convict Thompson of robbery.

Thompson's next claim is that the trial court erred when it gave a binding instruction during the penalty phase of the trial as to the presence of an aggravating factor, and that trial counsel was ineffective in failing to object to the instruction. The judge instructed as follows:

> The felony in question is robbery. You have already found by your verdict that the defendant killed Mr. Moye, that the defendant did so while attempting or committing a robbery, that the defendant was acting with malice and that the intent to commit the felony of robbery existed before the killing. Perpetration means to bring about or to carry out a crime, therefore, the Commonwealth must prove beyond a reasonable doubt that the killing took place while the crime of—was being committed. That, you have already decided.

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

The defense has offered, as a mitigating circumstance the mitigating circumstance of evidence concerning the character of the defendant.

■ The essence of this objection is that the court, through this instruction, allegedly instructed the jury at the penalty phase of the trial that it must find the Commonwealth had established an aggravating circumstance. The guiding principle in reviewing an allegedly erroneous jury instruction, as we have often held, is that the charge must be read in its entirety. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 46, 454 A.2d 937, 953 (1982); *Commonwealth v. Prosdocimo*, 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990).

■ Reading the charge in its entirety, the trial court, in addition to the passage cited above, repeatedly instructed the jury that it was required to decide whether the Commonwealth had proved the existence of an aggravating circumstance beyond a reasonable doubt. In the beginning of its instructions to the jury, two paragraphs before the passage complained of, the court stated:

Ladies and Gentlemen, you must now decide whether to sentence the defendant to death or life imprisonment. The sentence will depend upon what you found on aggravating and mitigating circumstances. The sentencing code defines aggravating and mitigating circumstances. They are things that make a first degree murder either more terrible or less terrible. You are the only ones who decide what things in your opinion and in your mind make a killing more terrible or less terrible. Aggravating circumstances and mitigating circumstances have equal importance. Your verdict must be a sentence of death if you unanimously find, that is all of you find, at least one aggravating circumstance and no mitigating circumstances or if you find one aggravating circumstance which outweighs any mitigating circumstance. If you do not all agree on one or the other of these findings, then the only verdict that you may return is a sentence of life imprisonment.

The Commonwealth must prove any aggravating circumstance beyond a reasonable doubt. This does not mean that the Commonwealth must prove the aggravating circumstance beyond all doubt or to a mathematical certainty. To define reasonable doubt again for you, a reasonable doubt is the kind of doubt that would cause a reasonable and sensible person to hesitate before acting upon an important matter in his own affairs. A reasonable doubt must be a real doubt. It may not be one that a juror imagines or makes up to avoid carrying out an unpleasant duty.

By contrast, the defendant must prove any mitigating circumstances; however, he only has to prove it by a preponderance of the evidence. That is, by the greater weight of the evidence. As has been pointed out to you, the aggravating circumstance in this case is the defendant committed a killing while in the perpetration of a felony.

Following this portion of the charge comes the portion objected to by Thompson. Reading the charge as a whole, we cannot conclude that the trial court erroneously instructed the jury as to aggravating and mitigating circumstances.

Moreover, the charge was correct. The court was merely reminding the jury of what it had done in the guilt phase of the trial: it had determined that Thompson had killed the victim in the perpetration of a felony. The guilt-phase instruction was that the jury could find Thompson guilty of robbery only if it found that Thompson caused serious bodily injury in the course of committing a theft. Since the jury convicted Thompson of robbery, it must have determined that he committed the shooting while perpetrating the theft. The charge was not, therefore, improper.

As to the claim that counsel was ineffective in failing to object to the charge, we must consider whether the defendant:

establish[ed] that the underlying claim is of arguable merit, that counsel had no reasonable basis for failing to pursue the claim, and that defendant was prejudiced by counsel's failure.

*Commonwealth v. Baxter,* 537 Pa. 41, 47, 640 A.2d 1271, 1274 (1994), citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Since there was no error in the court's instruction, an objection would not have been sustained, and counsel was not, therefore, ineffective for failing to object.

Next, Thompson claims that the death penalty statute, 42 Pa.C.S. § 9711 et seq., is unconstitutional because it does not allow for an appeal of jury determinations in which aggravating circumstances are found to outweigh mitigating circumstances. The essence of Thompson's claim is not that the jury wrongly assessed the importance of the aggravating and mitigating circumstances in his case, but that Thompson's appellate rights were unconstitutionally abridged in that this court does not have jurisdiction to consider the question of whether the jury erred "as a matter of law" in weighing the aggravating and mitigating circumstances.

Thompson points out that in *Commonwealth v. Fahy,* 512 Pa. 298, 516 A.2d 689 (1986) we stated:

Under our legislative scheme, it is exclusively a jury question whether any mitigating factor is to be given determinative weight when balanced with other mitigating and aggravating circumstances in the case.

512 Pa. at 317, 516 A.2d at 698. From this, he concludes that we have no jurisdiction to review the sentence.

This is incorrect. While it is true that we do not perform a weight-of-evidence analysis of the jury's evaluation of aggravating and mitigating circumstances, we do review the sentence pursuant to 42 Pa.C.S. 9711(h)(3), which requires that we must affirm a death sentence unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the

circumstances of the crime and the character and record of the defendant.

If the sentence is rational, i.e., *not* the product of passion, prejudice or any other arbitrary factor, and if the evidence supports the finding of an aggravating circumstance, this court must affirm the death sentence. Otherwise, it must reverse. This is tantamount to reviewing the fairness of the jury's evaluation of the aggravating and mitigating circumstances "as a matter of law." Short of imposing our own evaluation of the aggravating and mitigating circumstances, in which case we would usurp the jury function altogether, we cannot conceive of a more thoroughgoing review of the sentencing procedure. Since our statute guides the jury's deliberations by defining for them the parameters of what they may consider as aggravating circumstances, and since it also safeguards the rationality and fairness of the jury's deliberations, it meets federal and state constitutional requirements as to sentencing.[4] The claim is without merit.

4. In *Graham v. Collins*, —— U.S. ——, ——, 113 S.Ct. 892, 906–07, 122 L.Ed.2d 260, 281 (1993) the United States Supreme Court has recently summarized the constitutional requirements of death penalty sentencing. The Court points out that *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) distilled from *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) two principles about sentencing discretion: The discretion given the sentencer must be "directed and limited" to avoid arbitrary and capricious action and this discretion must be exercised in an informed manner. —— U.S. at ——, 113 S.Ct. at 906–07, 122 L.Ed.2d at 281. In other words, the jury's discretion must be rational and based on information about the circumstances of the crime and about the accused as an individual. *Id.*

The Court stated:
> The jury should be "given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." ... "Otherwise, the system cannot function in a consistent and a rational manner."

*Id.*

Pennsylvania's statute does all these things. The jury is given a list of aggravating circumstances and it may consider any mitigating circumstances it chooses. Thus, society's guidance in sentencing has been accomplished by the statute. The aggravating circumstances must be established beyond a reasonable doubt and must be supported by the evidence. And this court automatically reviews each death sentence for passion, prejudice, arbitrariness, sufficiency of evidence, sufficiency of

 Next, Thompson claims that it was error for the trial court to allow into evidence the record taken at the preliminary hearing of the testimony of an eyewitness who died before the time of trial.

42 Pa.C.S. § 5917 provides:

> Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found.... notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue.

Although the statute plainly permits the introduction into evidence of preliminary hearing testimony of a witness who is deceased at the time of trial, this court has held, additionally, that in order for prior testimony to be admissible in a subsequent proceeding as substantive evidence against the accused, there must have been a "full and fair opportunity to cross-examine." *Commonwealth v. Bazemore*, 531 Pa. 582, 588, 614 A.2d 684 (1992). Such opportunity was present here. The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial.[5] The assignment of error is without merit.

Next, Thompson asserts that he is entitled to life imprisonment or a new sentencing hearing because of improper prose-

---

evidence in support of aggravating circumstances, and proportionality of sentencing.

Thus, the constitutional requirement of rationality in sentencing is met by the statute. More is not constitutionally required.

**5.** In *Bazemore*, the Commonwealth failed to disclose prior to a preliminary hearing that a witness made an inconsistent prior statement, thus depriving the defendant of an opportunity for "full and fair" cross-examination. Failure to disclose evidence is not part of the present case.

cutorial closing remarks during the penalty hearing and because trial counsel was ineffective in failing to object to the improper remarks.

It is axiomatic that in reviewing the prosecutor's remarks, we must consider the entire context of his summation, *Commonwealth v. Carpenter*, 533 Pa. 40, 49, 617 A.2d 1263 (1992). Moreover, even if the remarks were improper and counsel should have objected, a death sentence may be overturned only if the improper remarks "arouse[d] the jury's emotions to such a degree that it became impossible to impose a sentence based on relevant evidence according to the standards of the death penalty statute." *Commonwealth v. Marshall*, 534 Pa. 488, 509, 633 A.2d 1100 (1993); *Commonwealth v. Pelzer*, 531 Pa. 235, 252, 612 A.2d 407, 416 (1992).

First, Thompson complains that the prosecutor remarked that as he stood over the victim with a gun, he showed no remorse.[6] We have plainly stated that such a comment, that the criminal showed no sympathy for the victim, is not improper at the penalty phase of the trial. *Commonwealth v. Marshall*, 534 Pa. at 509, 633 A.2d at 1110, quoting *Commonwealth v. Baker*, 531 Pa. 541, 558, 614 A.2d 663, 671–72 (1992).

Thompson also complains that the prosecutor told the jurors they had already decided that an aggravating circumstance existed when they rendered their verdict.[7] We have

6. The prosecutor's remarks were:
> Consider also the circumstances under which [the victim's life] was gone. As the defendant stood there over him with the gun, what was expressed? What was the expression of the defendant? Did he shed a tear? Did he exhibit any remorse? No. According to Hank Freeman the only thing that was said when Hank came out there lamenting the death of his friend was, "You going to pay that amount?" "You going to pay me the two hundred bucks?"

NT 10–11–91, 52–53.

7. The prosecutor stated:
> If you determine that there is or are aggravating circumstances, and I'm here to tell you there is ...

NT 10–11–91, 50
> Indeed, by deciding the case, when Judge Clarke instructed you on the law of robbery, and he told you that if in the course of committing a theft the defendant inflicts serious bodily injury upon another, that

already discussed this matter and have concluded that the statement was an accurate description of what the jury did. There is nothing improper in the prosecutor's argument that the jury's verdict supports its finding of the aggravating circumstance that the murder was committed during the perpetration of a felony.

Next Thompson complains that the prosecutor stated: "That even to this very moment, he's angling and trying to get out of it." The context of the statement is:

The character of the man you are judging is the man who when the next day he's awakened by Detective Walsh and taken down to the police administration building is caught with the goods. He will give his version and not wild enough to say [the victim] was reaching for the gun. You all are already decided that did not occur. The angle of the bullet going downwards, it was impossible. But he's the kind of man who is angled on trying to get out of it even then. And even to this very moment he's angling and trying to get out of it.

This is well within the prosecutor's right to argue against Thompson's claim of mitigation—since Thompson put his character into issue as a mitigating factor—and to argue in favor of the death penalty.

Finally, Thompson argues that the prosecutor "pandered" to the jury's emotions when he said:

But what we are really talking about is beyond those walls, beyond those windows, spilling out into the streets of North Philadelphia, where ordinary people walk, live, breathe and die, every day, breathe and die.

is robbery. There can be no more serious bodily injury than death. So you decided that was done. And you also decided it was in the course of committing a theft, in the course of taking something. So in essence, you already have decided there is an aggravating circumstance that Bill Moye was killed during the course of that forcible theft which is a robbery. So there is an aggravating circumstance. That is a given based on the decision you have already made. I'll not go any further.

NT 10–11–91, 54.

Perhaps through oversight, Thompson neglected to mention that what preceded these remarks was the following:

> [C]lose your eyes for one moment. And what we're really talking about is not some carefully orchestrated trial which is designed to ensure that only sterile facts be presented to you. But what we are really talking about is beyond those walls, beyond those windows, spilling out into the streets of North Philadelphia, where ordinary people walk, live, breathe and die, every day, breathe and die.

Far from attempting to pander to the emotions of the jury, the prosecutor was reminding the jury that the rigid and formal structure of the courtroom should not cause them to lose sight of the fact that the outcome of the trial may affect the lives of ordinary people. There is no impropriety in suggesting that the jury consider the impact of Thompson's behavior upon society as a whole.

As to counsel's ineffectiveness in failing to object to the remarks complained of, as we stated earlier in this case, in order to be found ineffective, counsel must determine that the underlying claim is of arguable merit, that counsel had no reasonable basis for failing to pursue the claim, and that the defendant was prejudiced by counsel's failure. Since we have determined that the underlying claim was not of arguable merit, counsel cannot have been ineffective for failing to object to the complained of statements.

Next, Thompson claims that trial counsel was ineffective for failing to adequately review the statement of a deceased eyewitness, Edward Freeman. Freeman's preliminary hearing testimony had been admitted into evidence at trial. Thompson called a private investigator, who testified that Freeman had spoken to the investigator and recanted his preliminary hearing identification of Thompson as the murderer. The Commonwealth then offered Freeman's prior statement to police in order to rebut Thompson's claim that Freeman's preliminary hearing testimony was false. Trial counsel and the prosecutor reviewed the statement given to police, redacted certain parts, and the detective read the statement to the jury. Included in the statement read to the jury was

Freeman's statement that when he ran to the victim, who was dying, the victim identified Thompson as the person who shot him.

Trial counsel objected to the dying declaration, alleging that he thought it was to be redacted. The prosecutor denied that he had agreed to redact the dying declaration. The trial court sustained the objection and directed the jury not to consider the dying declaration.

Freeman's statement was that he ran to the victim as he lay on the ground, opened the victim's jacket, and saw blood on his chest. He administered mouth to mouth resuscitation and asked the victim whether Thompson had shot him. The victim shook his head in the affirmative. Shortly afterward, the victim lapsed into unconsciousness and never revived.

The ineffectiveness claim is without merit. It was error for the trial court to exclude the statement. The victim was dying and uttered his identification at that time. The identification, therefore, was admissible both as a dying declaration, *Commonwealth v. Frederick,* 508 Pa. 527, 531–32, 498 A.2d 1322 (1985) (admissibility requires declarant's belief that he is going to die, that death is imminent, and that death actually results, and belief in impending death can be inferred from circumstances); and also as an excited utterance, *Commonwealth v. Penn,* 497 Pa. 232, 242, 439 A.2d 1154 (1982) (statement made in response to a question may be excited utterance). Following the court's cautionary instruction, trial counsel quickly indicated that he did not want a mistrial. The exclusion of the evidence and the cautionary instruction had already given Thompson more than he was entitled to and more than he was likely to achieve on retrial.

Since Freeman's statement was admissible, defense counsel was not ineffective in failing to more thoroughly review the statement before it was read, for defendant was not impermissibly prejudiced by the reading of an admissible statement, the trial court's ruling notwithstanding.

Next, Thompson claims that the verdict is against the weight of the evidence. An identical claim was raised in

*Commonwealth v. John Wesley Brown,* 538 Pa. 410, 648 A.2d 1177 (1994) also decided this day. There we held that our review of a weight of the evidence claim is whether the lower court abused its discretion in failing to award a new trial. We also noted that the challenge to the weight of the evidence, unlike a sufficiency of evidence challenge, requires the assessment of the credibility of testimony offered by the Commonwealth, and requires that the verdict be so contrary to the evidence as to shock one's sense of justice. Needless to say, as we point out in *Brown,* a trial court's refusal to award a new trial because the verdict is claimed to be against the weight of evidence is one of the least assailable of the trial court's rulings. In the present case, the trial court stated:

> The determination on the issue of "weight of the evidence requires an assessment of the credibility of the testimony offered by the Commonwealth." *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987).... In order to prevail the defendant must establish that the verdict was absolutely and irreconcilably contradictory to incontrovertible facts, human experience or the laws of nature or based on mere conjecture. See *Commonwealth v. Santana,* 460 Pa. 482, 333 A.2d 876 (1975). This court having observed the witnesses, reviewed their testimony and the other evidence presented finds nothing about the jury's determination that so shocks one's sense of justice that a new trial is warranted.

We find no abuse of discretion in the trial court's refusal to award a new trial.

Finally, Thompson claims that his sentence was disproportionate. The jury unanimously found the aggravating circumstance that Thompson committed murder while in the perpetration of a felony. Some jurors found that Thompson established mitigating circumstance (e)(8) ("Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.") The jury unanimously found that the aggravating circumstance outweighed the mitigating circumstance. The issue before us is whether the sentence, based on this summary of the aggrava-

ting and mitigating circumstances, is disproportionate. Our review of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts indicates that there is no excess or disproportionality in the sentence imposed.

Judgment of sentence is affirmed.[8]

MONTEMURO, J., is sitting by designation.

8. The prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).