656 A.2d 133

**COMMONWEALTH of Pennsylvania**

v.

**Antonio T. GARAFFA, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 2, 1994.

Filed March 22, 1995.

Daylin B. Leach, Allentown, for appellant.

Jacquelyn C. Paradis, Asst. Dist. Atty., Allentown, for Com.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

DEL SOLE, Judge:

Appellant, Antonio Garaffa, was convicted of Rape, his post-verdict motions were denied and he was sentenced to two to four years imprisonment. This appeal followed.

The nineteen year old complainant was employed as a waitress in Appellant's pizza shop located in Jim Thorpe, Pennsylvania. On April 20, 1989, the complainant told Appellant that she was quitting her job because she was leaving her boyfriend and was going to move to Lansdale, Pennsylvania to live with her mother. Appellant urged her to stay and promised that he would help her find and furnish an apartment. He then gave her fifty dollars as a birthday present and asked her to meet with him that evening to discuss the apartment but he cautioned her not to tell his wife.

As arranged, the two met later that evening in the parking lot of another restaurant. From there, the complainant, driving her own car, followed Appellant to another restaurant where she parked and left her car. The complainant then got into Appellant's car and, after rejecting Appellant's suggestion that they drive to Atlantic City, the two drove to a pizza parlor owned by one of Appellant's friends.

After eating dinner, Appellant, the complainant, and Appellant's friend left the friend's pizza parlor and went to a nearby bar where the complainant sat with the two men while the men drank. Appellant's friend testified that during this time, Appellant and the complainant were hugging and kissing. The complainant testified, on the other hand, that while Appellant repeatedly tried to put his arm around her, she rejected his advances.

In spite of the complainant's objections, after leaving the bar, the three drove to another bar called Spangles, which was located in the Holiday Inn in Fogelsville, Pennsylvania. Upon arriving at Spangles, the complainant left her purse in Appellant's car. The three then went into the bar where Appellant and his friend talked and drank and Appellant continued to try to hold the complainant's hand. The complainant testified that during this period, she attempted to discuss finding an apartment, but Appellant assured her that they would discuss it later. A few times during the evening, under the auspice that she wanted to call her mother, the complainant left the table and, with money given to her by Appellant, called one of her girlfriends. The friend testified that during the calls the complainant sounded upset, was crying, and said that she wanted to go home but that Appellant would not let her leave.

Eventually, Appellant's friend left Spangles whereupon Appellant suggested to the complainant that they get a room in the Holiday Inn where they could talk about finding her an apartment. After informing Appellant that she was not going to have sex with him and receiving his assurance that they were only going to talk, the two then entered a hotel room located off of the hotel's lobby area where the following events, as summarized by the trial court, transpired:

> Once inside the room, she removed her jacket and sat down on the bed. Defendant smoked a cigarette and then pushed [the complainant] back on the bed and began kissing her. She started to cry and asked him to stop, but she did not push him away. He pulled her pants and underwear down to her knees and began to have oral sex with her. She pushed his head away and told him to stop. He stopped performing oral sex and stood up in front of her. While she admitted at this point she could have left the room, she did not do so because she was too frightened as she did not know what to expect from Defendant.
>
> Next, Defendant opened his pants, laid on top of her, and had intercourse with her. Defendant's hands were near her head during the act of intercourse. [The complainant] tearfully told Defendant that he was hurting her and re-

quested that he stop as the act of sex was painful due to a cyst located on her ovary. Defendant complied with her request and, according to his testimony, ejaculated onto [the complainant's] stomach because she had told him that she was not on the pill. [The complainant] then told Defendant she wanted to go home. However, Defendant did not respond, but instead went into the bathroom and closed the door. [The complainant] smoked a cigarette while waiting for him to come out of the bathroom. When Defendant emerged, [the complainant] went into the bathroom.

Trial court Opinion dated filed February 9, 1994 pages 5–6.

After the complainant came out of the bathroom, Appellant and she left the room. Appellant told the complainant that he had to stop at the front desk and that she should wait for him by his car. The complainant testified that as they were walking down the hallway, Appellant had his arm around her and said "don't make it look like you just got raped and [then he] laughed". (N.T., Vol. II, dated 9/11/90 at page 48). The complainant then walked out of the hotel crying and ran up to a young man in the parking lot, told him that she had just been raped and, at her request, the young man drove her to a police station. Thereafter, Appellant was charged with rape and was convicted by a jury. His post-verdict motions were denied, he was sentenced and this appeal followed.

Appellant claims that the trial court erred in determining that the Commonwealth offered evidence sufficient to support the jury's finding that the necessary element of "forcible compulsion" or "threat of forcible compulsion" contained in our rape statute was present. In addition, Appellant argues that the jury's verdict is contrary to the weight of the evidence and that his right to a speedy trial was violated.

Our legislature has defined the crime of rape, in pertinent part, as follows:

§ 3121. Rape

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

18 Pa.C.S.A. § 3121.

■ Appellant argues that the Commonwealth failed to prove the necessary element of forcible compulsion, or threat of forcible compulsion and argues that this case is factually similar to and, therefore, controlled by our supreme court's recent decision in *Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161 (1994).

In *Berkowitz*, the complainant, a female college student, went to the appellant's room where the two ultimately engaged in intercourse. Thereafter, the complainant claimed that she was raped by the appellant and he, in turn, argued that the act was consensual. The appellant was convicted by a jury of one count of rape and one count of indecent assault. Appellant's judgment of sentence with respect to the rape charge was vacated by this court and the matter was remanded to the trial court for a new trial on the indecent assault charge. The Commonwealth appealed and our supreme court affirmed this court's reversal of the rape conviction finding that the Commonwealth failed to prove forcible compulsion and reinstated the jury's verdict regarding the charge of indecent assault.

In the present case, Appellant focuses on what he believes to be the similarities between this case and *Berkowitz*. Appellant argues that factors such as the victim's admissions that she willingly accompanied Appellant into the hotel room and failed to attempt to leave the room when given the opportunity, coupled with the fact that Appellant did not verbally threaten her, shows the lack of forcible compulsion. We disagree.

In reaching its decision in *Berkowitz*, the supreme court wrote that, "[i]n regard to the critical issue of forcible compulsion, the complainant's testimony is devoid of any statement which clearly or adequately describes the use of force or the threat of force against her." *Id.* at 148, 641 A.2d 1161 (1994).

After carefully reviewing the victim's testimony in the present case, we hold that the element of forcible compulsion was proved. The victim testified that Appellant pushed her down on the bed, climbed on top of her and she began crying and asked him to stop. She then stated that, "[h]e just kept huggin' and kissin' me, and I was just *fightin'*, shocked, scared, I didn't know what to do." [emphasis added] (N.T., Vol. II, dated 9/11/90 at p. 39). The victim testified that she pushed Appellant's head away as he attempted to perform oral sex on her and that she begged him to stop. Appellant then stood up and, ignoring her pleas, once again got on top of the victim and vaginally penetrated her. (Notes of testimony dated September 11, 1990 pages 39 to 40).

The supreme court in *Berkowitz,* citing to the earlier case of *Commonwealth v. Mlinarich,* 518 Pa. 247, 542 A.2d 1335 (1988), noted that while the complainant testified that she repeatedly said, "no" throughout the encounter, that is only relevant for purposes of determining consent and has no bearing on the issue of force. "[T]he ruling in *Mlinarich* implicitly dictates that where there is a lack of consent, but no showing of either physical force, a threat of physical force, or psychological coercion, the "forcible compulsion" requirement under 18 Pa.C.S. § 3121 is not met." *Berkowitz,* 537 Pa. at 149, 641 A.2d at 1164.

In the present case, there was clearly a showing of "forcible compulsion". The victim testified that she was *pushed* back on the bed, that she was *"fightin'"* Appellant's advances and that she *pushed* him away.[1] Accordingly, we hold that the trial court did not err in finding that the Commonwealth proved the requisite element of forcible compulsion.

■ Appellant also claims that the jury's verdict was against the weight of the evidence. In reviewing a claim

---

1. The complainant in *Commonwealth v. Berkowitz,* 537 Pa. 143, 641 A.2d at 1161 (1994) testified that "it was possible" that she did nothing to discourage the appellant's attempts at lifting her bra and shirt and that when he placed her on the bed it "wasn't slow like a romantic kind of thing, but it wasn't a fast shove either. It was kind of in the middle." *Id.* at 148, 641 A.2d at 1164.

490

challenging the weight of the evidence our review is constrained to the question of whether the trial court abused its discretion in denying Appellant's request for a new trial. *Commonwealth v. John Wesley Brown,* 538 Pa. 410, 648 A.2d 1177 (1994), *Commonwealth v. Thompson,* 538 Pa. 297, 648 A.2d 315 (1994). After reviewing the record before us, we hold that the trial court did not abuse its discretion in refusing to award a new trial.

Finally, Appellant argues that he was denied his right to a speedy trial as provided for in Pennsylvania Rule of Criminal Procedure 1100, 42 Pa.C.S.A. 1100. This issue was adequately addressed by the trial court in its Opinion authored by The Honorable James N. Diefenderfer and filed February 9, 1994. Accordingly, we adopt the trial court's reasoning as it relates to this issue.

Judgment of sentence affirmed.