J-S18019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIC SHELLEY | |
| Appellant | No. 598 EDA 2016 |

Appeal from the Judgment of Sentence dated February 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010089-2014

BEFORE: PANELLA, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 27, 2017**

Appellant Eric Shelley appeals from the judgment of sentence entered following his convictions for robbery, criminal conspiracy, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and possession of a firearm by a person prohibited from doing so.[1] We affirm.

The underlying facts which led to the criminal charges against Appellant were stated in full by the trial court in its Pa.R.A.P. 1925(a) opinion, and we need not restate them in full here. To summarize, Malik Hassan, the complainant in this case, was walking to his home on 19th Street around 1:00 a.m. on the morning of June 9, 2014. He encountered a

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701, 903, 6106, 6108, and 6105, respectively.

group of approximately six men, including Appellant, near the corner of Shirley and Olive Streets. One of them said, "[T]hat's your check. Go get that," at which point Appellant began to approach Mr. Hassan. Mr. Hassan ran to the corner of Shirley Street and 19th Street, and saw Appellant at the corner of Olive Street and 19th Street.[2] Mr. Hassan ran to the top of his front steps and opened his vestibule door. Mr. Hassan waited for ten to fifteen seconds, until he saw Appellant emerge from the corner, holding a black and silver handgun.[3] Appellant and Mr. Hassan looked at each other for a second, and then Mr. Hassan ran inside and shut the door, but continued to watch Appellant through the peephole. Appellant crossed 19th Street, put the gun in his waistband, and passed by Mr. Hassan's residence on the other side of the street. Appellant then returned down Appellant's side of the street and passed Mr. Hassan's home a second time, saying "Where did he go? Did you see where the boul go?"[4] Appellant again had his gun drawn.

_____

[2] Olive Street, Shirley Street, and 19th Street form a triangle. Appellant's emergence at the corner of Olive and 19th Streets indicates that he traversed the full block of Olive Street while Mr. Hassan ran down the block of Shirley Street. *See* Trial Ct. Op. at 2.

[3] They were 25 feet apart at this time. *See* N.T., 12/8/15, at 54.

[4] We understand "the boul" to be a slang reference to Mr. Hassan. When Appellant made his statement, he was just outside of Mr. Hassan's home, about five feet from where Mr. Hassan was standing. *See* N.T., 12/8/15, at 57. Mr. Hassan testified that there were no other pedestrians in the area. *Id.*

Mr. Hassan called the police, who apprehended Appellant. Mr. Hassan then identified Appellant. Police also apprehended another man who had been in the group seen by Mr. Hassan, and they ultimately retrieved a gun from that man. Mr. Hassan then identified that gun as the one used by Appellant. **See** Trial Ct. Op., 9/15/16, at 2-7; N.T. 12/8/15, at 38-57.

Appellant was convicted by a jury on December 10, 2015.[5] On February 12, 2016, Appellant was sentenced to an aggregate of four to ten years' incarceration followed by five years' of probation. Appellant timely appealed, presenting the following issues for our review:

> I. Whether the evidence was sufficient to sustain the verdict on the robbery charge?
>
> II. Whether the evidence was sufficient to sustain the verdict on the conspiracy charge?
>
> III. Whether the court erred in not granting Appellant's motion for judgment of [acquittal]?

Appellant's Brief at 3.[6]

_____

[5] Appellant was convicted for the crime of unlawful possession of a firearm following a bench trial on that same date. **See** Trial Ct. Op. at 1.

[6] Although Appellant did not raise before the trial court his argument that the evidence was insufficient to support his conviction for conspiracy, we will address the issue, as the trial court, while noting waiver, thoroughly addressed the issue in its opinion, the Commonwealth does not argue that the issue is waived, and the record is sufficient for our review. **See generally Commonwealth v. Laboy**, 936 A.2d 1058, 1058-60 (Pa. 2007) (_per curiam_) (declining to find waiver of sufficiency argument that was only generally stated in the 1925(b) statement, where trial court addressed the sufficiency of the evidence in its 1925(a) opinion, and the specific sufficiency

_(Footnote Continued Next Page)_

We review a challenge to the sufficiency of the evidence in accordance with the following:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. McFadden*, 156 A.3d 299, 303 (Pa. Super. 2017).

Appellant argues that his convictions were based on mere conjecture. *See* Appellant's Brief at 10-11. According to Appellant, when he and Mr. Hassan reached 19th Street, Appellant put his gun away and did not demand property from or threaten Mr. Hassan. And, despite watching Mr. Hassan enter his home, Appellant passed by his residence twice, asking aloud "Where did he go?" Appellant argues that these actions do not make out the elements of robbery, but rather indicate that "[A]ppellant wanted others to believe he was looking for the complainant much more than he actually wanted to engage the complainant in any way." *Id.* at 11. Appellant also claims that the evidence is not sufficient to prove conspiracy, because "there was no evidence presented that [A]ppellant was acting with anyone else at any time during the events at issue." *Id.*

---
*(Footnote Continued)*

arguments raised on appeal were fully amenable to review by the reviewing court).

A person is guilty of robbery if, "in the course of committing a theft," he "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). "A conviction for robbery does not require proof of a completed theft." *Commonwealth v. Robinson*, 936 A.2d 107, 110 (Pa. Super. 2007), *appeal denied*, 948 A.2d 804 (Pa. 2008). Rather, the statute defines "in the course of committing a theft" to include an act occurring "in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2); *see Robinson*, 936 A.2d at 110. Nor does a conviction for robbery require explicit verbal threats or actual serious bodily injury, particularly where the defendant brandished a firearm:

> The Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury." The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of "serious bodily injury." A factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm.

*Commonwealth v. Alford*, 880 A.2d 666, 676 (Pa. Super.) (quoting *Commonwealth v. Hopkins*, 747 A.2d 910, 914-15 (Pa. Super. 2000) (citations omitted)), *appeal denied*, 890 A.2d 1055 (Pa. 2005).

A person commits conspiracy when, with the intent of promoting or facilitating the commission of a crime, he "agrees with such other person or

persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." 18 Pa.C.S. § 903(a)(1). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, *i.e.*, the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." **Commonwealth v. Poland**, 26 A.3d 518, 521 (Pa. Super. 2011) (italicization added), **appeal denied**, 37 A.3d 1195 (Pa. 2012).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Susan I. Schulman, we conclude that there was sufficient evidence presented to establish beyond a reasonable doubt that Appellant committed robbery and conspiracy to commit robbery. **See** Trial Ct. Op. at 11-12 (finding that Appellant pursued Mr. Hassan in response to the cue of "There's your check. Go get that"; Appellant's pursuit of Mr. Hassan took place at 1:00 a.m.; Appellant pursued Mr. Hassan with a gun in his hand; Appellant pursued Mr. Hassan upon their initial encounter, continued to pursue Mr. Hassan when they had both emerged onto 19th street, and continued to pursue Mr. Hassan even after Mr. Hassan had retreated inside, by pacing back and forth in front of Mr. Hassan's door, and calling "Where did he go?").

Thus, we affirm on the basis of the trial court's opinion, and the parties are instructed to attach a copy of the trial court's opinion of September 15, 2016, to any future filing that references this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2017

zIN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :   CP-51-CR-0010089-2014

                    :

           VS.   CP-51-CR-0010089-2014 Comm. v. Shelley, Eric
                        Opinion



ERIC SHELLEY                       598 EDA 2016

7499801801

OPINION

**FILED**

**SEP 1.5 2016**

Appeals/Post Trial
Office of Judicial Records

SCHULMAN, S.I., J.

Eric Shelley ("Appellant") has appealed this Court's judgment of conviction and sentence. This Court submits the following Opinion in accordance with the requirements of Pa. R.A.P. 1925, and for the reasons set forth herein, recommends that its judgment be affirmed.

PROCEDURAL HISTORY

On December 10, 2015, following a jury trial before this Court, Appellant was convicted of Robbery, Criminal Conspiracy, Firearms Not to Be Carried without a License and Carrying Firearms on Public Streets in Philadelphia. On the same date, following a bifurcated trial before this Court, Appellant was convicted of Persons Not to Possess Firearms.

On February 12, 2016, upon review of the pre-sentence investigation report and consideration of all relevant facts and circumstances of this case, this Court sentenced Appellant to an aggregate term of four (4) to ten (10) years' incarceration, followed by five (5) years of probation. He subsequently appealed, and this Court ordered him to file a Concise Statement of Matters Complained of on Appeal in accord with Pa.R.A.P. 1925(b). Counsel for Appellant timely complied.

## FACTUAL HISTORY

At trial, the Commonwealth presented the testimony of the complainant, Malik Hassan. Mr. Hassan testified that, on June 8, 2014, he completed his work at a center city restaurant at approximately 11:00 p.m., and went to his home located at 711 North 19th Street in Philadelphia (between Fairmount Avenue and Brown Street). After dropping of some belongings, at approximately 12:00 a.m., he walked to a nearby bar located at 17th Street and Fairmount Avenue, where he had a shot of whiskey and a light beer. At approximately 12:50 a.m., he left the bar to return home. (See N.T. 12/08/15, pp. 35-38).

The map below will facilitate comprehension of the events that ensued:



2

Mr. Hassan testified that his usual route home consisted of walking westbound on Fairmount Avenue, crossing 18th Street, then taking a shortcut by turning right onto Shirley Street followed by a quick left onto Olive Street, which would put him on 19th Street, just a few houses from his home. On the night at issue, while walking on Shirley Street just before Olive, he encountered two males approaching from Francis Street -- one who was wearing a grey hoodie with a front pocket, and the other wearing a dark blue track suit with white stripes on its sides. As they crossed paths, one of the males said, "[W]hat's going on?", and Mr. Hassan responded, "What's up?" The two males then turned westbound onto Olive Street -- i.e., the route Mr. Hassan had intended to take -- so Mr. Hassan waited on the corner of Olive and Shirley Streets to see where they would go. (See N.T. 12/08/15, pp. 38-45).

Mr. Hassan watched the two males meet up with approximately 4 other males toward the end of Olive Street (closer to 19th). After a few seconds, one of the males stated, "[T]hat's your check. Go get that." At that point, according to Mr. Hassan's testimony, a male (later identified as Appellant) left the crowd and started walking directly toward Mr. Hassan:

> Q. What happens at the point [you hear somebody say, "That's your check; go get that"?]
>
> A. One of them who had joined from -- was in the second larger group, started heading towards me, and he was wearing a white T-shirt, a tight white T-shirt. He seemed shorter than everyone else in the group. He stood out and he walked out of the middle of the street out to the sidewalk and was coming towards me.
>
> Q. How soon after you heard somebody say that's your check; go get that, did the man in the tight white shirt start walking towards you?
>
> A. Pretty much right away like two or three seconds. Like right away.

3

(See N.T. 12/08/15, pp. 45-47).

Fearing for his safety, Mr. Hassan made a sharp left turn onto (the angled portion of) Shirley Street, and sprinted all the way to 19th Street. There, he looked to his left (southbound) on 19th Street, to see if anyone from the large crowd was coming from Olive Street:

> Q. When you get to this corner on Shirley and 19th, what do you do?
>
> A. I like kind of half go around the corner, and then in my head, I was thinking I only saw really one of them coming towards me. And there was still a large group, so I didn't want to come down here [toward Olive Street]. I wanted to see if anyone was going to come around [from Olive Street] before I made like the last quick dash to my house. I was kind of like cornered. I didn't want to go further north, but I wanted to make sure I wasn't like being circled. So I stopped there to see what was going to happen next.

(See N.T. 12/08/15, pp. 48-49).

Instead of someone from the larger group, however, it was Appellant who emerged on 19th Street from Olive -- i.e., Appellant had circled back up Olive Street to 19th. At that point, Mr. Hassan observed Appellant holding a black and silver handgun out in front of him. Mr. Hassan and Appellant then made eye contact, after which Mr. Hassan retreated into his home and shut the door. Mr. Hassan watched Appellant through the peephole of his front door; Appellant first walked northbound on the other side of 19th street before returning to Mr. Hassan's side of the street and walking by his residence a second time. Mr. Hassan then heard Appellant say, "Where did he go? Did you see where the [boy] go?" (See N.T. 12/08/15, pp. 49-57).

Mr. Hassan testified that when he saw that Appellant returned, standing directly in front of his front door with a gun, he called police:

> Q. At what point did you call police?

4

A.      When he came back down. After I saw him walk past on the other side of the street, I waited until he came back right in front of me, like literally like five feet in front of my eyes. And right after he passed when he said like "Where did he go? Did you see where the [boy] go?", at that point the gun was there. I was the only one out there, and whatever he was going to do, he was going to do to me. So that's when I called the cops.

(N.T. 12/08/15, p. 57).

Police arrived within two minutes. Mr. Hassan described the above events to the responding police officer, Officer Holden; he also provided physical descriptions of Appellant and the two males he initially encountered. Officer Holden asked him to "get in" the cruiser so that they could search the immediate vicinity for the males he described. Within five minutes, they encountered the same group of males on a nearby street, namely, the 800 block of Perkiomen Street. Mr. Hassan "immediately recognized" Appellant as his assailant, and told Officer Holden, "Yes, that's definitely the guy with the white T-shirt I saw with the gun." The officer then dropped off Mr. Hassan a couple blocks away so that he could stop Appellant and his cohorts; back-up officers picked up Mr. Hassan and transported him back to Perkiomen Street, where he once again positively identified Appellant without hesitation. He also positively identified the black and silver handgun secured at the scene as the one wielded by Appellant. (See N.T. 12/08/15, pp. 57-64).

Philadelphia Police Officer Jeffrey Holden testified next for the Commonwealth. In relevant part, Officer Holden testified that he was approximately one minute away when he received the radio call that took him to Mr. Hassan's residence. While obtaining descriptive information from Mr. Hassan, Officer Holden took him in his police cruiser to try to find the culprits. Officer Holden testified that within three or four minutes, he came upon a group of males at 800 Pekiomen St.

5

Q. Let's talk about what happened when you made it to the 800 block of Perkiomen Street? When you turned onto that block, what, if anything, occurred?

A. When I turned onto the 800 block of Perkiomen Street, there was a group of black males; some were on the left side of the street and some o[n] the right side of the street. ... So instantly he sees the guy with the white shirt, which was Defendant Eric Shelley [Appellant]. He sees him and he was like, "That's the guy. That's the guy." I was like, "You sure?" He was like, "That's the guy. That's the guy."

(See N.T. 12/09/15, pp. 4-11).

Officer Holden testified that he took Mr. Hassan a few blocks away for his safety and called back-up officers to meet Mr. Hassan. Officer Holden returned to Perkiomen Street to stop and investigate the males. Back-up officers transported Mr. Hassan to Perkiomen Street, where he positively identified Appellant, as well as the male in the grey hoodie. He was unable to unequivocally identify the male in the dark tracksuit. After the identifications, one of the males - - Co-Defendant Lawrence Jones -- stated that since he's been cleared of any warrants and was not identified by Mr. Hassan, "Can I just get my gun and go?" Officer Holden asked Co-Defendant Jones if he had a gun license, to which he responded in the affirmative. Co-Defendant Jones went into an adjacent Toyota Camry -- which was owned by the father of the male in the grey hoodie -- and retrieved a silver and black handgun, which he showed to the officer. Officer Holden made the gun safe and showed it to Mr. Hassan, who positively identified it as the gun used by Appellant approximately 30 minutes earlier. The gun, which was loaded with 14 live rounds, was secured under property receipt.

(See N.T. 12/09/15, pp. 11-18, 44).

The Commonwealth next presented the testimony of Philadelphia Police Detective Neil Goldstein. Detective Goldstein testified that, following his interview of Co-Defendant Jones, he

6

elected to release him from police custody and returned his registered firearm. Detective Goldstein explained that his decision simply was a "blunder" on his part. (See N.T. 12/09/15, pp. 46-50).

Next, the Commonwealth called Philadelphia Police Detective James Waring to the stand. Detective Waring testified that, following the inadvertent release of Co-Defendant Jones, he and his team executed a warrant to search Jones' residence on July 25, 2014, which yielded a "gun box" for the gun at issue, to wit, a .40 caliber Smith and Wesson handgun, model SW40DE, serial number RCA1642. Detective Waring also had obtained an arrest warrant, but Co-Defendant Jones was not present at the time. Two hours later, he made contact with Jones, who turned in himself and the handgun to detectives. (See N.T. 12/09/15, pp. 58-64).

Finally, the Commonwealth introduced stipulated evidence establishing that: (a) Appellant did not have a valid license to carry a firearm; (b) Co-Defendant Jones did have a valid license to carry a firearm; and (c) the subject handgun was test fired by the Firearms Identification Unit, and determined to be operable. (See N.T. 12/09/15, p. 74).

Following the conclusion of the Commonwealth's case-in-chief, Appellant moved for judgment of acquittal on the basis that there was insufficient evidence of a robbery. This Court denied relief and expressed its reasoning on the record:

> THE COURT: In regard to the robbery charge [as] to both defendants, the statement, "That's your check. Go get that," whereupon [Appellant] immediately starts following the complaining witness and then rounds this corner and shows his gun, that's enough for an attempted theft. And that's all you need here is an attempt to commit a theft. That is enough to go to the jury. I agree it is completely circumstantial, but it is enough. So the judgment of acquittal [is] denied in regard to both defendants on the charge of robbery.

(N.T. 12/09/15, pp. 82-83).

7

Based on the evidence adduced at trial, the jury found Appellant guilty of Robbery, Criminal Conspiracy, Firearms Not to Be Carried without a License and Carrying Firearms on Public Streets in Philadelphia; it acquitted Co-Defendant Jones of all charges. On the same date, following a bifurcated trial before this Court, Appellant was convicted of Persons Not to Possess Firearms. Following a comprehensive pre-sentence investigation, this Court imposed sentence as previously set forth.

## ISSUES ON APPEAL

Appellant raises the following issues on appeal:

> 1. The evidence presented at trial was insufficient, as a matter of law, to support the verdict of guilty of Robbery. There was insufficient evidence presented to make out multiple elements of the Robbery charge. There was insufficient evidence presented to prove that Appellant committed either Theft or Attempted Theft. Further, while theft, or attempted theft, is a necessary element of the Robbery charge, regardless of the lack of evidence on this point, there was insufficient evidence presented to prove that Appellant used force or threatened to use force against the complainant at any time. There was insufficient evidence to prove that Appellant had any intent to commit a Robbery.
>
> 2. The evidence presented at trial was insufficient, as a matter of law, to support the verdict of guilty of Conspiracy to Commit Robbery. In addition to the arguments presented above, there was insufficient evidence to prove that Appellant agreed to commit a Robbery with anyone. There was insufficient evidence that there was any "meeting of the minds" between Appellant and anyone else to commit a Robbery.
>
> 3. The Trial Court erred in denying Appellant's motion for [judgment] of acquittal on the charges of Robbery and Conspiracy for the reasons stated above.

(Appellant's Rule 1925(b) Statement, ¶¶ 1-3).

8

This Court will address Appellant's claims together.

DISCUSSION

**SUFFICIENCY OF THE EVIDENCE**

Appellant claims that this Court erred by denying his Motion for Judgment of Acquittal,[1] and the jury's verdicts as to Robbery and Criminal Conspiracy were not supported by sufficient evidence. These claims fail.

### a. Judgment of Acquittal/ Sufficiency Standard

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." Commonwealth v. Hutchinson, 947 A.2d 800, 805 (Pa. Super. 2008). Therefore, the standard to be applied is the same as in reviewing the sufficiency of the evidence. Id.

In evaluating a challenge to the sufficiency of the evidence, a reviewing court must view the evidence in the light most favorable to the Commonwealth as verdict winner. It accepts as true all the evidence, direct and circumstantial, and all reasonable inferences arising therefrom upon which the finder of fact could properly have based its verdict, in determining whether the evidence and inferences are sufficient to support the challenged conviction. Commonwealth v. Carroll, 507 A.2d 819, 820 (Pa. 1986); Commonwealth v. Griscavage, 517 A.2d 1256, 1259 (Pa. 1986); Commonwealth v. Hopkins, 747 A.2d 910, 913 (Pa. Super. 2000).

---

[1] In his Rule 1925(b) statement, Appellant claims that the Court erred by not granting his Motion for Judgment of Acquittal on both the Robbery and Conspiracy charges. At trial, however, Appellant only presented argument as to Robbery, and this Court noted same on the record. (See N.T. 12/09/15, p. 84). Putting aside the waiver of this issue, for the reasons discussed below, there was no error in permitting the Conspiracy charge go to the jury.

9

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Commonwealth v. Jones, 874 A.2d 108, 120 (Pa. Super. 2005); see Commonwealth v. Rippy, 732 A.2d 1216, 1218-1219 (Pa. Super. 1999) (while conviction must be based on more than mere speculation, "the Commonwealth need not establish guilt to a mathematical certainty"). **Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.**" Hutchinson, 947 A.2d at 806 (emphasis in original); see also Commonwealth v. Sneddon, 738 A.2d 1026, 1027 (Pa. Super. 1999).

"The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Jones, 874 A.2d at 120. Thus, the decision of the trier of fact will not be disturbed where there is support for the verdict in the record. Commonwealth v. Bachert, 453 A.2d 931, 935 (Pa. 1982). When assessing the sufficiency of the evidence, this Court "may not weigh the evidence and substitute [its] judgment for that of the fact-finder." Commonwealth v. Vetrini, 734 A.2d 404, 407 (Pa. Super. 1999).

"Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Hutchinson, 947 A2d at 806. "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Id.

### b. Specific Offenses

#### i. Robbery

A person commits the crime of robbery if, in the course of attempting a theft, he "'threatens another with or intentionally puts him in fear of immediate serious bodily injury.'"

10

Commonwealth v. Gillard, 850 A.2d 1273, 1275 (Pa. Super. 2004) (quoting 18 Pa.C.S. § 3701(a)(1)(ii)). The robbery is complete upon commission or threat of violence, and thus completion of the theft is not required. See Commonwealth v. Thompson, 648 A.2d 315, 319 (Pa. 1999), overruled in part on other grounds by Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745 (Pa. 2000); Commonwealth v. Natividad, 773 A.2d 167, 176 (Pa. 2001) ("There is no requirement that the robbery be successful.").

### ii. Criminal Conspiracy

"The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." Commonwealth v. Gibson, 668 A.2d 552, 555 (Pa. Super. 1995) (quoting Commonwealth v. Volk, 444 A.2d 1182, 1185 (Pa. Super. 1982)). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." Commonwealth v. Swerdlow, 636 A.2d 1173, 1177 (Pa. Super. 1994) (quoting Commonwealth v. Kennedy, 453 A.2d 927, 929-930 (Pa. 1982)). "An agreement sufficient to establish a conspiracy can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." Commonwealth v. Rivera, 637 A.2d 997, 998 (Pa. Super. 1994) (en banc).

Applying the foregoing principles, the evidence was sufficient to sustain the jury's verdicts. Appellant manifested a common understanding to commit Robbery when he acted immediately on cue of "There's your check. Go get that", walking directly toward Mr. Hassan at 1:00 a.m., and then circling back -- **with gun in hand** -- in pursuit of his loot. Appellant then

11

immediately pursued Mr. Hassan. Even after Mr. Hassan secreted himself behind his door, Appellant paced back and forth, calling "Where did he go?".

A Motion for Judgment of Acquittal will be granted where the Commonwealth's evidence fails to show that a reasonable factfinder could conclude that the elements of the crime charged have been proven beyond a reasonable doubt. Here, the evidence of Appellant's attempt to commit Robbery were made out by the Appellant's response to "There's your check. Go get that." The obvious and reasonable inference is the common understanding to commit a Robbery. That there was no express agreement is of no import, as their seldom is. See Commonwealth v. Swerdlow, 636 A.2d at 1177. Appellant's subsequent pursuit of Mr. Hassan with gun in hand certainly could be viewed by a reasonable factfinder as evidence of his intent to commit a Robbery.

In regard to Appellant's argument that the evidence was insufficient to sustain a verdict of guilt, the jury was free to accept or reject the direct, as well as the circumstantial evidence based upon its evaluation of the totality of the circumstances. That Appellant was unsuccessful in taking anything from Mr. Hassan is unavailing. See Commonwealth v. Thompson, 648 A.2d at 319. The evidence established a clear intention by Appellant to commit a Robbery. Indeed, he was not doggedly pursuing Mr. Hassan with gun in hand at 1:00 a.m. in order to exchange dinner recipes. Rather, the plain, common sense inference was an attempted theft with the threat of force -- which inference, given all the facts and circumstances, the jury was entitled to make. As such, the jury's verdict should not be disturbed.

CONCLUSION

Based on the reasons set forth in the foregoing Opinion, this Court's judgment of sentence should be affirmed.

12

BY THE COURT:

DATE: 9/5/16

SUSAN I. SCHULMAN, J.

13