J-S83033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIQUE LEE MOFFATT, | : | |
| | : | |
| Appellant | : | No. 900 WDA 2018 |

Appeal from the PCRA Order May 30, 2018
in the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000046-2014

BEFORE: PANELLA, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED MARCH 15, 2019**

Dominique Lee Moffatt ("Moffatt") appeals from the Order dismissing his second Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court set forth the relevant factual and procedural history as follows:

> The case concerns a robbery by [Moffatt], and his co-conspirators, Michael Toran [("Toran")] and Eric Akins [("Akins")], of Barbato's Restaurant on West Sixth Street in Erie, Pennsylvania on October 5, 2013.
>
> On November 12, 2014, following a two-day jury trial, [Moffatt] was convicted of [robbery, criminal conspiracy to commit robbery, terroristic threats, two counts of recklessly endangering another person, and receiving stolen property[2]].

_____

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] 18 Pa.C.S.A. §§ 3701(a), 903(a), 2706(a), 2705, 3925(a).

On January 27, 2015, [Moffatt] was sentenced to an aggregate of 12 to 24 years of incarceration. On January 28, 2015, in response to a Motion to Modify and/or Reconsider Sentencing, the [trial court] modified the sentence to an aggregate of 10 to 20 years of incarceration.

On October 29, 2015, [Moffatt], *pro se*, filed a Petition for [PCRA] relief. Attorney William Hathaway [("Attorney Hathaway")] was appointed as PCRA counsel. In the Supplement to [the PCRA Petition] filed January 28, 2016, PCRA counsel requested reinstatement of [Moffatt's] right to file a post-sentence motion *nunc pro tunc*, and an appeal *nunc pro tunc* from the judgment of sentence. On April 28, 2016, the [c]ourt granted the PCRA [Petition].

On May 31, 2016, Attorney Hathaway filed a Motion for New Trial and/or Arrest of Judgment *Nunc Pro Tunc*, challenging the weight and sufficiency of the evidence. The [c]ourt denied the post-sentence [M]otion on June 2, 2016. Attorney Hathaway timely filed a Notice of Appeal and a court-ordered [Pa.R.A.P.] 1925(b) Statement. In the 1925(b) Statement, [Moffatt] generally challenged the weight and sufficiency of the evidence. In the [Pa.R.A.P.] 1925(a) Opinion, the [c]ourt found the sufficiency and weight claims were waived as vague.

On direct appeal, [this] Court agreed [that] the appellate claims were waived as too vague to allow for proper review and analysis of the issues. Accordingly, on April 12, 2017, [this] Court affirmed the judgment of sentence without reaching the merits of the issues presented. On August 29, 2017, the Pennsylvania Supreme Court denied [Moffatt's] Petition for Allowance of Appeal.

On October 30, 2018, [Moffatt] filed a [second] *pro se* PCRA [Petition[3]] alleging a violation of the Constitution of Pennsylvania or the Constitution or laws of the United States, ineffective assistance of counsel, improper obstruction by Commonwealth officials of [Moffatt's] right to appeal, and the imposition of an

---

[3] As a result of the reinstatement of his direct appeal rights, Moffatt's judgment of sentence became final on November 29, 2017, at the conclusion of the ninety-day period during which Moffatt could have sought review by the United States Supreme Court. Thus, Moffatt's second Petition was timely filed under the PCRA.

illegal sentence by checking off boxes on the PCRA form [P]etition. In support of the claims, [Moffatt], *pro se*, asserted his sentence was harsh [] and the convictions were based upon inconsistent testimony of Commonwealth witnesses.

On November 13, 2017, the [c]ourt appointed Attorney Michael Harmon [("Attorney Harmon")] as PCRA counsel. On December 13, 2017, Attorney Harmon filed a "no-merit" letter and a Petition for Leave to Withdraw as Counsel. Attorney Harmon advised [that] the legality of the sentence claim was without merit. Attorney Harmon acknowledged [that Moffatt] received a prior record score of "refel" [*sic*] due to prior adjudications as a minor, and the guidelines were calculated under the deadly weapon enhancement. Attorney Harmon further noted the sentences [for robbery and terroristic threats] were within the standard range of the sentencing guidelines....

On January 24, 2018, Attorney Harmon filed an Amended [PCRA Petition challenging the effectiveness of Attorney Hathaway.]

PCRA Court Notice of Intent to Dismiss Pursuant to Pa.R.Crim.P. 907, 5/4/18, 1-4 (internal citations and footnotes omitted, footnotes added). On May 30, 2018, the PCRA court denied Attorney Harmon's Petition for Leave to withdraw and dismissed Moffatt's second PCRA Petition. Thereafter, Moffatt filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Moffatt raises the following issues for our review:

1. Whether [Attorney Hathaway] was ineffective in failing to properly preserve [Moffatt's] challenge to the sufficiency of the evidence regarding his criminal conviction in the above-captioned matter[,] as [Moffatt] was not identified by any witness at the crime scene as being one of the alleged perpetrators; the Commonwealth did not present any forensic evidence that would establish that [Moffatt] was a perpetrator at the scene of the crime; and[] the only evidence presented by the Commonwealth to establish that [Moffatt] was at the

scene of the crime was testimony from a previously[-]recorded interview of an alleged accomplice[,] who later recanted said statement at the time of trial[?]

2. Whether [Attorney Hathaway] was ineffective in failing to properly preserve [Moffatt's] challenge to the weight of the evidence regarding his criminal conviction in the above-captioned matter[,] as [Moffatt] was not identified by any witness at the crime scene as being one of the alleged perpetrators; the Commonwealth did not present any forensic evidence that would establish that [Moffatt] was a perpetrator at the scene of the crime; and[] the only evidence presented by the Commonwealth to establish that [Moffatt] was at the scene of the crime was testimony from a previously[-]recorded interview of an alleged accomplice[,] who later recanted said statement at the time of trial[?]

Brief for Appellant at 7.

Our standard of review regarding an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Ortiz**, 17 A.3d 417, 420 (Pa. Super. 2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Id.**

To be eligible for relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate, by a preponderance of the evidence, that (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or omission; and (3) there is a reasonable probability that the result of the proceeding would have been different absent such error. **Commonwealth v. Spotz**, 18 A.3d 244, 260 (Pa. 2011). "A PCRA petitioner must address each of these prongs on appeal." **Commonwealth v. Wholaver**, 177 A.3d 136, 144 (Pa. 2018).

- 4 -

In both issues presented on appeal, Moffatt claims that Attorney Hathaway rendered ineffective assistance by failing to preserve his challenges to the sufficiency and weight of evidence presented at trial. Brief for Appellant at 12, 20. Moffatt's argument fails to address both the second and third prongs of an effectiveness claim. Instead, Moffatt essentially recycles the substantive portions of his arguments from his direct appeal, which issues were dismissed for vagueness. *See id.* at 18-19, 22-23; *see also Commonwealth v. Moffatt*, 997 WDA 2016 (Pa. Super. 2017) (unpublished memorandum at 5-8).

It is not the role of this Court to generate Moffatt's arguments for him. "When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (internal citation and quotation marks omitted). Accordingly, both of Moffatt's claims are waived.

Even if Moffatt's claims were not waived, Moffatt still would not have prevailed, as "counsel cannot be deemed ineffective for failing to raise a [] claim [that is without merit]." *Id.* at 804. In both instances, Moffatt has failed to prove that the underlying claims are of arguable merit, let alone that

he was prejudiced as a result of Attorney Hathaway's failure to preserve the same.[4] *See Spotz*, *supra.*

In addressing the arguable merit to Moffatt's claims, we observe that Moffatt's underlying sufficiency challenge relies on a lack of forensic evidence, the absence of eye-witness testimony specifically implicating him, and an alleged recanting of co-conspirator Akins's incriminating statement made to police. Brief for Appellant at 18-19.

> In assessing [a] sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved each element of the crime[s] beyond a reasonable doubt. The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

*Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017) (internal quotation marks, citations, and brackets omitted). "The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

---

[4] We note that "unsupported speculation" does not establish a reasonable probability that the outcome of trial would have been different. *Commonwealth v. Charleston*, 94 A.3d 1012, 1026 (Pa. Super. 2014). Here, Moffatt fails to offer even unsupported speculation that he was prejudiced by Attorney Hathaway's actions or omissions.

Regarding Moffatt's first claim, the PCRA court set forth the relevant law, addressed Moffatt's claim, and concluded that it lacks merit. *See* PCRA Court Notice of Intent to Dismiss, 5/4/18, 8-20. Upon our review of the record, we agree with and adopt the sound reasoning of the PCRA court in determining that the Commonwealth presented sufficient evidence to prove every element of the crimes for which Moffatt was convicted. *See id.* Thus, we discern no arguable merit to Moffatt's claims, and are unable to afford him relief on this basis.

Moffatt also challenges Attorney Hathaway's failure to preserve his claim that the verdicts are against the weight of the evidence. Again, Moffatt avers that a lack of forensic evidence, the absence of eye-witness testimony specifically implicating him, and an alleged recantation of co-conspirator Akins's incriminating statement made to police necessarily undermine the jury's verdicts. Brief for Appellant at 22-23.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence … an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal quotation marks and citations omitted).

The jury was free to believe any portion of Akins's testimony, including the recorded confession implicating Moffatt, as well as his testimony at trial whereby he confirmed that his guilty plea specifically named Moffatt as an accomplice. ***See*** N.T., 11/12/14, at 13. The jury was also free to reject any portion of Akins's testimony, including his testimony at trial where he stated that he was "coached" to implicate Moffatt, did not understand that Moffatt was implicated by his guilty plea, and/or was "high" when he spoke to police. ***See id.*** at 14, 17-18, 28. As Moffatt points out, testimonial evidence provided the basis for his convictions. ***See*** Brief for Appellant at 22-23. As credibility determinations fall within the exclusive province of the jury, ***see Ramtahal, supra***, we fail to discern from the record any arguable merit to Moffatt's claims and conclude that he is not entitled to relief. ***See Commonwealth v. McClure***, 144 A.3d 970, 977 (Pa. Super. 2016) (holding that it is an encroachment upon the province of the jury to manipulate its discretion in determining credibility).

Based upon the foregoing, we find that the PCRA court's determination was supported by the record and free of legal error. As such, we affirm the PCRA court's dismissal of Moffatt's second PCRA Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/15/2019

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF ERIE COUNTY, PENNSYLVANIA
:
v. : CRIMINAL DIVISION
:
DOMINIQUE LEE MOFFATT, :
PETITIONER : NO. 46 of 2014

## NOTICE OF INTENT TO DISMISS PCRA
## PURSUANT TO PA.R.CRIM.P. 907

AND NOW, to-wit, this ___4th___ day of May, 2018, after an independent review of the

record, consideration of Petitioner's *pro se* Motion for Post Conviction Collateral Relief filed

October 30, 2017, the "no-merit" letter of PCRA counsel filed December 13, 2017, and the

Amended Petition for Post-Conviction Relief filed by PCRA counsel on January 24, 2018, this

Court finds no relief is due. Because Petitioner's claims in the *pro se* PCRA Motion and

Amended PCRA can be addressed based upon the existing record, there is no need for an

evidentiary hearing on the underlying claims.

## FACTUAL/PROCEDURAL BACKGROUND

The relevant facts and procedural history of this case are as follows.

The case concerns a robbery by Appellant, Dominique Lee Moffatt, and his co-

conspirators, Michael Toran and Eric Akins, of Barbato's Restaurant on West Sixth Street in

Erie, Pennsylvania on October 5, 2013.[1]

On November 12, 2014, following a two-day jury trial, Appellant, was convicted of

Count One – Robbery, Count Two – Criminal Conspiracy (to commit Robbery), Count Three –

---

[1] At Erie County Docket No. 47 of 2014, Co-defendant Michael Toran was convicted of Robbery, Criminal Conspiracy (to commit Robbery), Recklessly Endangering Another Person (Jodi Deickhoff), Theft By Unlawful Taking, Receiving Stolen Property, and Recklessly Endangering Another Person (Lisa Gorton). At Erie County Docket No. 39 of 2014, co-conspirator Eric Akins pled guilty to Criminal Conspiracy (to commit Robbery).

1

Terroristic Threats, Count Four – Recklessly Endangering Another Person (Lisa Gorton). Count Five – Recklessly Endangering Another Person (Jodi Deickhoff), and Count Seven – Receiving Stolen Property.[2]

On January 27, 2015, Appellant was sentenced to an aggregate of 12 to 24 years of incarceration. *Transcript of Sentencing Proceedings, January 27, 2015 (Tr. Sentencing, 1/27/15), pp. 12-13.* On January 28, 2015, in response to a Motion to Modify and/or Reconsider Sentencing, the Court modified the sentence to an aggregate of 10 to 20 years of incarceration.

On October 29, 2015, Appellant, *pro se*, filed a Petition for Post-Conviction Collateral Relief. Attorney William Hathaway was appointed as PCRA counsel. In the Supplement to Motion for Post Conviction Collateral Relief filed January 28, 2016, PCRA counsel requested reinstatement of Appellant's right to file a post-sentence motion *nunc pro tunc*, and an appeal *nunc pro tunc* from the judgment of sentence. On April 28, 2016, the Court granted the PCRA motion.

On May 31, 2016, Attorney Hathaway filed a Motion for New Trial and/or Arrest of Judgment *Nunc Pro Tunc*, challenging the weight and sufficiency of the evidence. The Court denied the post-sentence motion on June 2, 2016. Attorney Hathaway timely filed a Notice of Appeal and a court-ordered 1925(b) Statement. In the 1925(b) Statement, Appellant generally challenged the weight and sufficiency of the evidence. In the 1925 (a) Opinion, the Court found the sufficiency and weight claims were waived as vague. *See Trial Court Opinion, September 12, 2016, pp. 2-3.*

On direct appeal, the Superior Court agreed the appellate claims were waived as too vague to allow for proper review and analysis of the issues. *See Commonwealth v. Moffatt, Unpublished Memorandum filed April 12, 2017 at 997 WDA 2016, pp. 5, 8.* Accordingly, on

---

[2] 18 Pa.C.S.A. §§3701(a)(1)(ii), 903(a), 2706(a)(1), 2705 (two counts) and 3925(a), respectively.

2

April 12, 2017, the Superior Court affirmed the judgment of sentence without reaching the merits of the issues presented. *Id.* *at p. 10.* On August 29, 2017, the Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal. *See Commonwealth v. Moffatt, Per Curiam Order of August 29, 2017 at 182 WAL 2017.*[3]

On October 30, 2017, Petitioner filed a *pro se* PCRA alleging a violation of the Constitution of Pennsylvania or the Constitution or laws of the United States, ineffective assistance of counsel, improper obstruction by Commonwealth officials of Petitioner's right to appeal, and the imposition of an illegal sentence by checking off boxes on the PCRA form petition. In support of the claims, Petitioner, *pro se,* asserted his sentence was harsh; and the convictions were based upon inconsistent testimony of Commonwealth witnesses.

On November 13, 2017, the Court appointed Attorney Michael Harmon as PCRA counsel. On December 13, 2017, PCRA counsel filed a "no merit" letter and a Petition for Leave to Withdraw as Counsel. PCRA counsel advised the legality of sentence claim was without merit. PCRA counsel acknowledged Petitioner received a prior record score of "refel" due to prior adjudications as a minor, and the guidelines were calculated under the deadly weapon enhancement. PCRA counsel further noted the sentences at Count One (Robbery) and Count Three (Terroristic Threats) were within the standard range of the sentencing guidelines.[4] Concurrent with the filing of the "no merit" letter, PCRA counsel filed a Petition for Leave to Withdraw as Counsel.

---

[3] Petitioner's January 27, 2015 judgment of sentence of became final on Monday, November 27, 2017, ninety (90) days after the Supreme Court of Pennsylvania denied allocator. *See, U.S. Sup. Ct. Rule 13(1), 1 Pa.C.S.A. §1908.*

[4] The sentence imposed at Count Three (Terroristic Threats) was consecutive to the sentence at Count One (Robbery). The sentences imposed at Counts Two (Criminal Conspiracy/Robbery), Four (REAP- Lisa Gorton ), and Five (REAP-Jodi Deickhoff ) merged with Count One. The sentence imposed at Count Seven (Receiving Stolen Property) merged with the sentences at Counts One and Three.

3

On January 24, 2018, Attorney Harmon filed an Amended Petition for Post Conviction Relief.

In the Amended PCRA filed January 24, 2018, Petitioner challenges the effectiveness of appellate counsel, Attorney Hathaway. Specifically, Petitioner raises the following claims:

1. Whether appellate counsel was ineffective for failing to preserve for appellate review Petitioner's challenge to the sufficiency of the evidence; and

2. Whether appellate counsel was ineffective for failing to preserve for appellate review Petitioner's challenge to the weight of the evidence.

In the Amended PCRA, Petitioner requested: a hearing concerning the ineffective assistance claims, photocopies of trial transcripts, and rescission of the Petition for Leave to Withdraw as Counsel pending disposition of the Amended PCRA. The Court granted PCRA counsel's request for copies of trial transcripts and denied the request for leave to withdraw as counsel.

The sentencing claim in the *pro se* PCRA Motion and the ineffective assistance claims in the Amended PCRA shall be addressed herein.

## DISCUSSION

### A. Illegal Sentencing Claim

The illegal sentencing claim in the *pro se* PCRA filed October 30, 2017 must be dismissed as wholly lacking in merit. In the PCRA, Petitioner failed to aver a basis for the claim the sentence was illegal. In the narrative section of the *pro se* PCRA, Petitioner indicated that, following convictions, he was "harshly sentenced."

Under the PCRA, the sole basis of relief with regard to sentencing is to plead and prove the imposition of an illegal sentence, that is, a sentence greater than the lawful maximum. *42 Pa.C.S.A. §9543(a)(2)(vii).* Petitioner's sentences at Count One (Robbery) and Count Three

4

(Terroristic Threats) were within the standard range of the sentencing guidelines. The sentences did not exceed the lawful maximums and were patently legal. The illegal sentencing claim is baseless.

Petitioner's reference to being "harshly sentenced" bespeaks a discretionary aspects of sentence claim. Any claim concerning the discretionary aspects of the sentence, is waived, having not been raised on direct review. *See 42 Pa.C.S.A. §§9543(a)(3); 9544(b).* Assuming *arguendo*, the claim is not waived, it is been meritless. There are ample reasons in the record to support the sentence imposed. *See Transcript of Proceedings, Sentencing Hearing, January 27, 2015 (Tr. Sentencing Hearing), pp. 6-13.*

The record at sentencing demonstrates no actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *See Commonwealth v. McAffee,* 849 A.2d 270, 274-275 (Pa.Super. 2004)(internal citation omitted). The sentences imposed were legal. The sentences were not manifestly excessive. The imposition of the sentence of confinement at Count Three to run consecutive to the sentence of confinement at Count One was clearly within the authority of the sentencing court. *See 42 Pa.C.S.A. §9721(a); Commonwealth v. Pierce,* 441 A.2d 1218 (Pa. Super. 1982), *Commonwealth v. Wright,* 832 A.2d 1104, 1107 (Pa.Super. 2003). The record fails to establish the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Tr. Sentencing Hearing, pp. 6-13.* Also, as required by 42 Pa.C.S.A. §9721(b), the sentencing court thoroughly placed on the record the reasons for imposition of sentence. The undersigned satisfied this requirement by identifying on the record he was informed by the presentence investigative report. *Tr., Sentencing Hearing, pp. 10-11. See Commonwealth v. Devers,* 546 A.2d 12, 18 (Pa. 1988);

5

*Commonwealth v. Pennington*, 751 A.2d 212, 217 (Pa.Super. 2000). No abuse of discretion occurred in sentencing Appellant. For these reasons, the averments in the *pro se* PCRA concerning sentencing must be dismissed.

## B. Ineffective Assistance of Appellate Counsel Claims

In the Amended PCRA filed January 24, 2018, Petitioner challenges the effectiveness of appellate counsel, Attorney Hathaway. Petitioner raises the following IAC claims:

3. Whether appellate counsel was ineffective for failing to preserve for appellate review Petitioner's challenge to the sufficiency of the evidence; and

4. Whether appellate counsel was ineffective for failing to preserve for appellate review Petitioner's challenge to the weight of the evidence.

On direct appeal the Superior Court found the sufficiency and weight of the evidence issues were not properly preserved. *See Commonwealth v. Moffatt, Unpublished Memorandum filed April 12, 2017 at 997 WDA 2016, pp. 5, 8.* However, for purposes of ineffective assistance of counsel claims, Petitioner is not prejudiced. As set forth herein, the evidence was sufficient as a matter of law to support the guilty verdicts. Further, none of the verdicts were against the weight of the evidence and the Court properly exercised its discretion in denying on June 2, 2016 the Motion for New Trial and/or Arrest of Judgment *Nunc Pro Tunc*.

### 1. Legal Standard to Establish Ineffective Assistance

To obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence, "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *42 Pa.C.S.A. §9543(a)(2)(ii).* "Generally, counsel's performance is presumed to be constitutionally adequate,

6

and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Commonwealth v. Johnson,* 966 A.2d 523, 532 (Pa. 2009).

To establish ineffective assistance of counsel, the petitioner must "demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission." *Commonwealth v. G.Y.,* 63 A.3d 259, 265 (Pa. Super. 2013). A finding of "prejudice" requires petitioner to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

> Even if counsel had no reasonable basis for the course of conduct pursued, [petitioner] is not entitled to relief if he fails to demonstrate the requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. When it is clear that [petitioner] has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met.

*Id.* (internal citations omitted).

Petitioner is unable to demonstrate prejudice by the failure of Appellate counsel to preserve on direct appeal the issues of the sufficiency and weight of the evidence. As discussed below, the evidence was sufficient to support the verdicts, and the verdicts were not against the weight of the evidence. As no prejudice can be established, Petitioner's ineffectiveness claims must be dismissed.

### 2. No Prejudice Occurred Because Evidence Was Sufficient to Support the Convictions

No prejudice occurred by Appellate counsel's failure to fully develop sufficiency of the evidence claims on direct appeal because as set forth herein the evidence presented at trial was indeed sufficient to support the verdicts.

## A. Sufficiency of the Evidence Standard

When evaluating a challenge to the sufficiency of the evidence, the Court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, together with all reasonable inferences from that evidence, the trier of fact could have found each element of the crime charged was established beyond a reasonable doubt. *Commonwealth v. Hargrave,* 745 A.3d 20, 22 (Pa.Super. 2000), *appeal denied,* 760 A.2d 851 (Pa. 2000)(internal citations omitted); *Commonwealth. v. Brunson,* 938 A.2d 1057, 1058 (Pa.Super. 2007); *Commonwealth v. Chambers,* 599 A.2d 630, 633 (Pa. 1991). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Hopkins,* 747 A.2d 910, 913 (Pa.Super. 2000). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, and any questions or doubts are to be resolved by the fact-finder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Hopkins, supra* at 913-14.

Viewing the evidence against this standard, the evidence was sufficient to support the verdicts.

### B. Factual Basis and Elements of the Crimes

#### 1. Count One: Robbery

The factual basis for the charge of Robbery was that Petitioner, on or about October 5, 2013, while in the course of committing a theft, entered Barbato's Restaurant on West Sixth Street in Erie, Pennsylvania and held a gun to Jodi Deitkoff's head and told her, "don't move" and "don't look at me bitch" and also pointed a gun at Lisa Gorton and told her to open the cash register and not to look at him.

8

Pennsylvania law defines the crime of robbery as follows:

(1) A person is guilty of robbery if, in the course of committing a theft, he:
  (i) inflicts serious bodily injury upon another;
  (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
  (iii) commits or threatens immediately to commit any felony of the first or second degree;
  (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
  (v) physically takes or removes property from the person of another by force however slight; or
  (vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa. C.S.A. § 3701.

### 2. Count Two: Criminal Conspiracy (to commit Robbery)

The factual basis for the charge of Criminal Conspiracy is that on or about October 5, 2013, with the intent of promoting or facilitating a robbery, Petitioner conspired with Michael Todd Toran and/or Eric Akins and others and agreed with them to commit Robbery or an attempt or solicitation to commit Robbery or aided such other person(s) in planning or committing Robbery, in that Petitioner entered Barbato's Restaurant and held a gun to Jodi Deickhoff's head and told her, "don't move" and "don't look at me bitch" and also pointed a gun at Lisa Gorton and told her to open the cash register and not to look at him.

This offense is defined as follows:

> (a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

9

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa. C.S.A. § 903.

To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy.

Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. **Additionally: [a]n agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.** These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super. 2011)(internal citations and quotations marks omitted)(emphasis added).

### 3. Count Three: Terroristic Threats

The factual basis for the charge of Terroristic Threats is that Petitioner, either directly or by virtue of his complicity, communicated a threat to commit any crime of violence with the intent to terrorize another in that at the relevant time Petitioner entered Barbato's Restaurant and a gun was put to the head of Jodi Deitkhoff who was told, "don't move" and "don't look at me bitch" and a gun was pointed at Lisa Gorton who was told to open the register and not to look at them.

A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to *inter alia*, commit any crime of violence with intent to terrorize another. 18 Pa. C.S.A. § 2706. To convict a defendant of terroristic threats, "the

10

Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Com. v. Sinnott,* 976 A.2d at 1188, quoting *Com. v. Tizer,* 684 A.2d 597, 600 (Pa.Super. 1996). The defendant need not harbor the specific intent to terrorize his victim; the elements of the offense are established so long as the evidence shows even reckless disregard for the risk of causing terror. *Com. v. Sinnott,* 976 A.2d at 1188.

### 4. Count Four: Recklessly Endangering Another Person (Lisa Gorton)

The factual basis for the charge of REAP (Lisa Gorton) is that Petitioner, either directly or by virtue of his complicity, recklessly engaged in conduct at Barbato's Restaurant which placed or may have placed another in danger of death or serious bodily injury in that a gun was pointed at Lisa Gorton who was told to open the cash register and not to look at them

A person commits the offense of recklessly endangering another person, a misdemeanor of the second degree, if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa. C.S.A. § 2705.

### 5. Count Five: Recklessly Endangering Another Person (Jodi Deickhoff)

The factual basis for the charge of REAP (Jodi Deickhoff) is that Petitioner, at the relevant date and time either directly or by virtue of his complicity, recklessly engaged in conduct at Barbato's Restaurant which placed or may have placed another in danger of death or serious bodily injury in that a gun was put to the head of Jodi Deitkhoff who was told, "don't move" and "don't look at me b____."

11

## 6. Count Seven: Receiving Stolen Property

The factual basis for the charge of Receiving Stolen Property is that at the relevant date and time, Petitioner either directly or by virtue of his complicity with another, intentionally received, retained or disposed of $346.00 in U.S. currency belonging to Barbato's Restaurant, knowing or having reason to believe the money was stolen.

The crime of Receiving Stolen Property is defined as follows:

(a) Offense defined.-A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

(b) Definition.- As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

*18 Pa. C.S.A. § 3925(a), (b).*

### C. Evidentiary Review[5]

**Lisa Gorton, Jodi Deickhoff and Eric Akins**

On October 5, 2013 at approximately 7:00 p.m., Petitioner and co-conspirators Michael Toran and Eric Akins engaged in a robbery of Barbato's Restaurant located on West Sixth Street in Erie, Pennsylvania.[6] At Petitioner's trial, the Commonwealth presented the testimony of eyewitnesses Lisa Gorton, Jodi Deickhoff and Eric Akins whose testimony is summarized herein.

Eric Akins remained outside Barbato's while two other black males, Petitioner and Michael Toran, entered the restaurant and held up at gunpoint Lisa Gorton, a restaurant

---

[5] The evidence is also summarized in the Superior Court Non-Precedential Decision filed April 12, 2017 at 997 WDA 2016.

[6] At Erie County Docket No. 47 of 2014, Co-defendant Michael Toran was convicted of Robbery, Criminal Conspiracy (to commit Robbery), Recklessly Endangering Another Person (Jodi Deickhoff), Theft By Unlawful Taking, Receiving Stolen Property, and Recklessly Endangering Another Person (Lisa Gorton). At Erie County Docket No. 39 of 2014, co-conspirator Eric Akins pled guilty to Criminal Conspiracy (to commit Robbery).

12

employee. *Transcript of Proceedings, November 10, 2014 (Tr. 11/10/14), pp. 22-24.* One of the males instructed Gorton to give them "all [the] F'ing money." *Tr. 11/10/14, pp. 24, 27, 34.* Gorton testified the taller male had a gun, wore a blue sweatshirt and had a blue bandanna around his face. *Tr. 11/10/14, pp. 23, 25-26, 35.* The shorter male wore a grey sweatshirt and gloves. *Tr. 11/10/14, pp. 25, 31, 33.* Gorton feared for her life, and for the safety of a regular customer, Jodi Deickhoff, who was also present. *Tr. 11/10/14, pp. 37-38.*

Dieckhoff testified she had stopped at Barbato's to pick up an order. As she entered the restaurant, she observed three black males standing outside. *Tr. 11/10/14, pp. 37-38.* Two of the males followed Dieckhoff inside, shoved her up against the counter, and held a gun to the back of her head. *Tr. 11/10/14, pp. 24, 27-28, 37-38, 43.* The assailant with the gun instructed Deickhoff, "Don't look at me, b____." *Tr. 11/10/14, pp. 40, 42.* Deickhoff also feared for her life. *Tr. 11/10/14, p. 40.* The shorter male with the grey sweatshirt approached the register, but Gorton did not look at him closely as the taller male had ordered her to look down. *Tr. 11/10/14, pp. 25, 29, 34.* As Gorton fumbled at the register trying to open it, the individual who ordered her to look down yelled at her again. *Tr. 11/10/14, p. 29.* Gorton opened the cash register drawer and began removing money from it. One of the assailants interceded and removed the entire register drawer himself. One of the males instructed Gorton to turn around. *Tr. 11/10/14, pp. 29, 34.* The males then ran out the door with the register drawer which contained $346.00 in cash. One of the males fired a shot in the air as Gorton called 911. *Tr. 11/10/14, pp. 26, 72; Transcript of Proceedings, November 12, 2014 (Tr. 11/12/14) p. 18.*

The incident was captured on film by a security camera inside the restaurant. The surveillance video was played for the jury during Gorton's testimony. *Tr. 11/10/14, pp. 26-27.*

13

The video depicted the events as described by Gorton, including the actions of the taller assailant as he pointed the gun at her. *Tr. 11/10/14, p. 27.*

The incident had a profound negative impact upon Gorton. Gorton testified she suffered anxiety attacks in the weeks following the incident and was afraid every time the door bell sounded. As of Petitioner's trial, she testified she continued to experience anxiety over the incident. *Tr. 11/10/14, pp. 28.*

Gorton and Deickhoff were interviewed by the police the day of the incident, and again shortly thereafter. *Tr. 11/10/14, pp. 28-29, 43-44.*

At Petitioner's trial, Akins testified three males were involved in the robbery. Akins remained outside the restaurant during the robbery. *Tr. 11/12/14, pp. 16-32.* He testified two other individuals who he did not want to name also participated in the robbery and were the ones who actually entered the restaurant. However, Akins admitted he informed the police during an interview that Petitioner and Michael Toran were the two other males who were involved in the robbery. Akins testified he admitted at his preliminary hearing that Petitioner and Toran participated with him in the robbery. Akins also admitted he pled guilty under oath to the crime of conspiracy to commit the robbery at Barbato's with the Petitioner and Michael Toran. *Tr. 11/12/14, pp. 7-15.*

After the robbery, Akins notified the police where the cash register drawer insert from Barbato's was located. Akins' videotaped statement to the police was played for the jury. *Tr. 11/12/14, pp. 7-16, 18, 20-21, 28, 32-33.*

**Raymond Breter**

The Commonwealth presented the testimony of Raymond Breter who was an employee of Barbato's Restaurant on the date of the incident. *Tr. 11/10/14, p. 48.* At the relevant time

14

Breter exited the restaurant from the front door to make a delivery. *Tr. 11/10/14, p. 48.* Breter observed a black male in his twenties outside Barbato's, looking in. *Tr. 11/10/14, p. 49.* The male had a long beard and thin face, and wore a grey hoodie pulled up, and red pants. *Tr. 11/10/14, pp. 49, 55, 58, 63.* Breter had a clear opportunity to observe the individual. *Tr. 11/10/14, pp. 49, 58.* Breter observed the individual get into a silver Ford Contour. *Tr. 11/10/14, p. 55.* There were other persons in the car. *Tr. 11/10/14, p. 61.* It was still light out at the time. *Tr. 11/10/14, p. 49.*

When Breter returned about 15 or twenty minutes later, the robbery was complete. *Tr. 11/10/14, p. 48.* Breter gave the police officers who responded to the 911 call a description of the individual he had seen outside Barbato's, and told them he would be able to recognize the person if shown a picture of him. *Tr. 11/10/14, pp. 50, 58.* Approximately three days later, Breter identified for the police from a photo lineup Michael Toran as the individual he saw standing outside Barbato's on the date of the incident. *Tr. 11/10/14, pp. 51-54, 79-80.* The photograph of the photo line-up, with the photograph which Breter circled, was marked as Commonwealth Exhibit No. 2. *Tr. 11/10/14, pp. 53-54.*

**City of Erie Police Officers Paul A. Bizzaro, Ryan Onderko and Dennis Oborski**

The Commonwealth also presented the testimony of investigating City of Erie Police Officers Paul A. Bizzaro, Ryan Onderko and Dennis Oborski whose relevant testimony is summarized herein.

Detective Bizzarro was assigned to investigate the Barbato's robbery that occurred on October 5, 2013. *Tr. 11/10/14, p. 74.* The crime scene was not processed for fingerprints because the two perpetrators depicted in the surveillance video of the robbery were wearing latex gloves. *Tr. 11/10/14, pp. 74, 76, 78.* Co-defendant Michael Toran became a suspect after

15

restaurant employee Raymond Breter identified Toran from the restaurant's video surveillance and the photo line-up as the person whom Breter had seen looking in the restaurant shortly before the robbery. In the surveillance video, Toran is seen wearing a light gray sweatshirt pulled tight around his head, and a camouflage bandanna. *Tr. 11/10/14, pp. 75-76, 79-81.*

Toran was arrested by Officer Onderko and Lieutenant Nolan four or five days after the robbery. *Tr. 11/10/14, pp. 80, 82.* Detective Bizzarro was present when Toran was arrested. *Tr. 11/10/14, pp. 87-88.* At that time, Toran was in possession of a .22 revolver and a camouflage bandanna. *Tr. 11/10/14, p. 88.* Toran admitted the bandanna belonged to him. There were two spent casings in the revolver. *Tr. 11/10/14, p. 108; Tr. 11/12/14, p. 50.*

Toran was read the Miranda warnings and interviewed by Detectives Bizzarro and Oborski. *Tr. 11/10/14, pp. 82-85.* During the interview, Toran admitted he was in the area on the day of the robbery and he saw Breter leave Barbato's. *Tr. 11/10/14, pp. 86, 89.*

Toran admitted a friend of his, Eric Akins, was also in the area at the time of the robbery. *Tr. 11/10/14, pp. 86-87, 89.*

The police interviewed Eric Akins on multiple occasions with regard to the incident. *Tr. 11/10/14, p. 90.* During the first interview, Akins was angry that Toran had provided his name to the police and he denied involvement in the robbery. *Tr. 11/10/14, p. 91.* During Akins' second interview which occurred ten days after the robbery, Akins admitted to his involvement in the robbery at Barbato's. *Tr. 11/10/14, p. 93; Tr. 11/12/14, p. 17.*

After the police interviewed Akins, a warrant was issued for the Petitioner's arrest. *Tr. 11/10/14, pp. 105-106.* The next day, the Defendant turned himself in. *Tr. 11/10/14, p. 106.*

Officer Onderko testified he arrested Michael Toran pursuant to an arrest warrant on October 9, 2013. *Tr. 11/12/14, p. 36.* During the chase with police on the day of his arrest,

16

Toran, who was wearing a grey hoodie, dropped a camouflage handkerchief, bandanna-style, and a handgun. *Tr. 11/12/14, pp. 36–41.*

Detective Oborski's investigation of the robbery at Barbato's included attending interviews of Eric Akins on October 11, 2013, and October 15, 2013. *Tr. 11/12/14, pp. 43, 45.* During one of the interviews, Akins admitted to Detective Oborski that Michael Toran and Petitioner participated in the robbery of Barbato's. Detective Oborski testified that Akins told him that Toran ran out of Barbato's with a cash registrar drawer and the Petitioner ran out of Barbato's with a gun that discharged in Barbato's parking lot. *Tr. 11/12/14, p. 47.*

**Robert Barbato**

The Commonwealth presented the testimony of Robert Barbato, the restaurant owner. *Tr. 11/10/14 pp. 70-73.* Barbato testified the insert from the cash drawer, and $346.00 was taken during the robbery. *Tr. 11/10/14, p. 72.* Barbato was not present during the incident. *Tr. 11/10/14, p. 71.* Surveillance video from a camera mounted inside the restaurant, behind the cash register, was turned over to the police. *Tr. 11/10/14, p. 71.* Approximately two days after the robbery, the police returned the empty cash drawer they recovered. *Tr. 11/10/14, p. 72.*

Commonwealth Exhibit Nos. 1 – 13 were admitted in evidence. *Tr. 11/12/14, p. 55.* Petitioner Moffatt Exhibits A and B were admitted in evidence. *Tr. 11/12/14, p. 59.*

**D. Discussion-Sufficiency of the Evidence**

There was sufficient evidence to support the convictions.

The evidence was sufficient for a jury to conclude Petitioner was guilty of Robbery. The evidence as described herein established Petitioner, one of the two black males who entered Barbato's, by his actions and/or words, threatened Lisa Gorton and Jodi Deickhoff, placing them in fear of immediate serious bodily injury, demanded money and fled the premises together with approximately $350.00 in cash. The evidence established, *inter alia,* Akins reported to police

17

that Petitioner and Toran were the two black males who entered the restaurant and Petitioner exited the restaurant with a gun which Petitioner discharged in Barbato's parking lot. The males had followed Dieckhoff inside the restaurant, shoved her up against the counter, and held a gun to the back of her head. One of the males instructed Gorton to give them "all [the] F'ing money" and one of the males pointed a gun at her. The surveillance video of the incident played for the jury during Gorton's testimony depicted the events as described by Gorton, including the actions of one of the assailants as he pointed the gun at her. Akins remained outside the restaurant and essentially acted as "look-out." Based upon the evidence adduced, the jury was free to make credibility determinations and conclude Petitioner was the gunman who held the women at gunpoint and co-defendant Toran took the cash register drawer liner with the cash contents.

For the aforesaid reasons, the evidence was sufficient for a jury to conclude Petitioner was guilty of Criminal Conspiracy (to commit robbery). The evidence sufficiently established Petitioner conspired with co-defendant Toran and/or Eric Akins with the intent of promoting or facilitating a robbery by either agreeing to commit robbery with them and/or attempting or soliciting to commit robbery and/or aiding Toran and/or Akins in committing Robbery. The record sufficiently establishes Petitioner participated in the robbery with Akins who remained outside, and with co-defendant Toran who entered the restaurant with Petitioner. The evidence sufficiently establishes that together, Petitioner and Toran threatened Gorton and the customer, Dieckhoff, by words and deeds, and Petitioner and Toran ran from the restaurant together. As one of the frightened women called 911, Petitioner shot off a gun in Barbato's parking lot while Toran fled holding the cash register drawer. The circumstances and conduct of Petitioner and the other two males surrounding the criminal episode established they acted in concert with the intent to commit robbery and they in fact committed robbery.

18

The evidence was likewise sufficient to convict Petitioner of the crime of Terroristic Threats. There was sufficient evidence to believe Petitioner entered the restaurant with Toran. There was sufficient evidence to believe that Petitioner held a gun inside the restaurant and told Gorton to give the two males "all [the] F'ing money" and/or alone or together with Toran shoved Deickhoff against a counter, held a gun to the back of her head and instructed Deickhoff, "Don't look at me, b____." It was apparent the males sought to steal money, and intentionally employed the force of words and actions to create fear and terror in Gorton and Dieckhoff with reckless disregard for the risk of causing such terror. The elements of the crime were met.

The evidence was sufficient to convict Petitioner of the crimes of Recklessly Endangering Another Person (Lisa Gorton) and Recklessly Endangering Another Person (Jodi Deickhoff). It is apparent from the facts that Petitioner, directly or by virtue of his complicity with Toran and Akins, recklessly engaged in conduct at Barbato's which placed or may have placed Gorton and Deickhoff in danger of death or serious bodily injury. This occurred when a gun was pointed at Gorton who was told to turn over all the money, and when Deickhoff was shoved against a counter, a gun was placed to her head and she was instructed not to look at them. The elements of these crimes were met.

The evidence was sufficient for the jury to conclude Petitioner was guilty of Receiving Stolen Property. There was sufficient evidence for the jury to conclude Petitioner entered the premises with Toran with the intent of stealing money. One of the males held a gun to Gorton and demanded the money from the cash register drawer. One of the men removed the cash drawer liner from the register drawer before Gorton could remove the money. The males fled together with the cash register drawer line containing approximately $350.00. Akins, the male who waited outside for Petitioner and Toran, later told the police where the cash register drawer

19

liner could be found. The police subsequently recovered cash register drawer liner. There was ample evidence Petitioner received money stolen from Barbato's Restaurant.

As to each crime for which Petitioner was convicted there was sufficient evidence to support the verdict. The jury was free to accept or reject inculpatory evidence as to Petitioner. The jury was within its province when it obviously chose to accept the inculpatory evidence and convict Petitioner of the crimes charged.

**3. No Prejudice Occurred Because No Verdict Was Against the Weight of the Evidence**

No prejudice occurred by Appellate counsel's failure to fully develop weight of the evidence claims on direct appeal because none of the verdicts were against the weight of the evidence and it was within the Court's discretion to deny the motion for a new trial.

**A. Weight of the Evidence Standard**

With regard to Petitioner's claim the verdicts were against the weight of the evidence, a new trial should be awarded only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth. v. Thompson,* 648 A.2d 315, 324 (Pa. 1994). A true weight of the evidence challenge "concedes that sufficient evidence exists to sustain the verdict but contends that the verdict was against the weight of the evidence." *Armbruster v. Horowitz,* 744 A.2d 285, 286 (Pa. Super. 1999)(citations omitted). An allegation the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Brown,* 648 A.2d 1177, 1189 (Pa. 1994).

"Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Id.* "A trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence." *Id.* at 1190.

20

According to the Supreme Court: "[W]hen the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion." *Id.* at 1189, quoting *Thompson v. City of Philadelphia,* 493 A.2d 669, 673 (Pa. 1985). "Needless to say, ... a trial court's refusal to award a new trial because the verdict is claimed to be against the weight of the evidence is one of the least assailable of the trial court's rulings." *Commonwealth v. Thompson,* 648 A.2d 315, 324 (Pa.1994).

Credibility determinations are within the province of the jury. *Commonwealth. v. Smith,* 861 A.2d 892, 896 (Pa. 2004) (citing *Com. v. Fisher,* 796 A.2d 1116, 1123 (Pa. 2001)). The trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to accept all, part or none of the evidence. *Commonwealth. v. Pappas,* 845 A.2d 829, 836 (Pa. Super. 2004). Credibility determinations are solely within the jury's judgment and cannot be changed as a matter of law.

### B. Discussion-Weight of the Evidence

Viewing the evidence against this standard, Petitioner's weight of the evidence claims are without merit. As previously discussed, the evidence established each element of the crimes for which Petitioner was convicted. The Court did not abuse its discretion in denying on June 2, 2016 Attorney Hathaway's Motion for New Trial and/or Arrest of Judgment *Nunc Pro Tunc,* challenging the weight and sufficiency of the evidence. The jury's verdicts do not shock one's sense of justice. The verdicts were amply supported by the evidence as summarized herein. Petitioner's weight of the evidence claims must be dismissed.

Petitioner's claims for relief under the PCRA on the basis appellate counsel, Attorney Hathaway, was ineffective for failing to preserve for appellate review Petitioner's claims regarding the sufficiency and weight of the evidence must be dismissed, as no prejudice to

21

Petitioner occurred. Petitioner cannot establish a reasonable probability that, but for the failure to preserve the sufficiency and weight issues for appellate review, the result of the proceeding would have been any different. Careful review of the record reveals the evidence presented at trial was sufficient to support the guilty verdicts, and no verdict was against the weight of the evidence.

## CONCLUSION

For the aforesaid reasons, Petitioner's claims in the *pro se* PCRA of October 30, 2017 and the amended counseled PCRA filed on January 24, 2018 must be dismissed. Petitioner is not entitled to relief under the PCRA. Petitioner is hereby put on notice that his Motion for Post Conviction Collateral Relief will be dismissed after twenty (20) days from the date of this Notice. Within this same time period, Petitioner shall have the right to file any Objections to this Notice.

BY THE COURT:

Daniel J. Brabender, Jr., Judge

cc:     District Attorney's Office
        Michael Harmon, Esq., 305 West Sixth Street, Erie, Pennsylvania 16507

22